FILED
BILLINGS DIV.

2007 AUG 31  PM 2 18

PATRICK E. DUFFY, CLERK
BY _____
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MONTANA

### BILLINGS DIVISION

| | |
|---|---|
| CATHY M. COE,<br><br>    **Plaintiff,**<br><br>  vs.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,[1]<br><br>    **Defendant.** | CV 06-174-BLG-CSO<br><br>ORDER GRANTING COMMISSIONER'S MOTION, DENYING COE'S MOTION, AND AFFIRMING COMMISSIONER'S DECISION |

  Plaintiff Cathy M. Coe ("Coe") initiated this action to obtain judicial review of the decision of Defendant Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-433, 1381-1383(c), respectively.

  On April 16, 2007, upon the parties' written consent, this case was assigned to the undersigned for all purposes (Court's

---

[1]Michael J. Astrue became the Commissioner of Social Security on February 12, 2007.  Under Rule 25(d)(1), Fed. R. Civ. P., Michael J. Astrue is substituted as Defendant in this case, and the caption is now amended to reflect this change.

Doc. No. 14).  Now pending before the Court are the parties'
cross-motions for summary judgment (Court's Doc. No. 17 (Coe's
motion) and Court's Doc. No. 20 (Commissioner's motion)).  Having
considered the issues presented by the parties, together with the
administrative record, the Court hereby grants the Commissioner's
motion, denies Coe's motion, and affirms the Commissioner's
decision denying DIB and SSI.

**I.    _PROCEDURAL BACKGROUND_**

Coe filed applications for DIB and SSI in September 2004.
*Tr. at 50-52; 306-10.*  She alleges that she has been unable to
work since July 22, 2004, because of limited vision from
pseudotumor cerebri.[2]  *Tr. at 90-91.*

---

[2]The Handbook of Ocular Disease Management, found at
http://www.revoptom.com/HANDBOOK/SECT53a.HTM, describes pseudotumor
cerebri as follows:

Pseudotumor cerebri (PTC) is encountered most frequently in
young, overweight women between the ages of 20 and 45.
Headache is the most common presenting complaint, occurring
in more than 90 percent of cases. Dizziness, nausea, and
vomiting may also be encountered, but typically there are no
alterations of consciousness or higher cognitive function.
Tinnitus, or a 'rushing' sound in the ears, is another
frequent complaint. Visual symptoms are present in up to 70
percent of all patients with PTC, and include transient
visual obscurations, general blurriness, and intermittent
horizontal diplopia. These symptoms tend to worsen in
association with Valsalva maneuvers and changes in posture.
Reports of ocular pain, particularly with extreme eye
movements, have also been noted.

*       *       *

Pseudotumor cerebri is a syndrome disorder defined
clinically by four criteria: (1) elevated intracranial
pressure as demonstrated by lumbar puncture; (2) normal
cerebral anatomy, as demonstrated by neuroradiographic

The Social Security Administration ("SSA") denied Coe's applications initially and on reconsideration. *Tr. at 31-35; 37-38; 311-14.* An Administrative Law Judge ("ALJ") held an administrative hearing on December 22, 2005, at which Coe appeared with counsel. *Tr. at 320-70.* The ALJ issued a written decision dated March 20, 2006, in which he found that Coe was not disabled within the meaning of the Act. *Tr. at 18-26.* The Appeals Council denied Coe's request for review *(Tr. at 6-10),* making the determination the Commissioner's final decision for purposes of judicial review. 20 C.F.R. §§ 404.981, 416.1481 (2007). Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

## II.   *STANDARD OF REVIEW*

This Court's review is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005); <u>Thomas v. Barnhart</u>, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable

---

evaluation; (3) normal cerebrospinal fluid composition; and (4) signs and symptoms of increased intracranial pressure, including papilledema.

While the mechanism of PTC is not fully understood, most experts agree that the disorder results from poor absorption of cerebrospinal fluid by the meninges surrounding the brain and spinal cord. The subsequent increase in extracerebral fluid volume leads to elevated intracranial pressure.

-3-

mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). Substantial evidence also has been described as "more than a mere scintilla" but "less than a preponderance." Sandegathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). The District Court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citation omitted).

### III. *BURDEN OF PROOF*

A claimant is disabled for purposes of the Social Security Act if: (1) the claimant has a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months, and (2) the impairment or impairments are of such severity that, considering the claimant's age, education and work experience, the claimant is not only unable to perform previous work, but the claimant cannot "engage in any other kind of substantial gainful work which exists in the

national economy." Schneider v. Commr. of Soc. Sec. Admin., 223
F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. § 1382c(a)(3)(A)-
(B)).

In determining whether a claimant is disabled, the
Commissioner follows a five-step sequential evaluation process.
Corrao v. Shalala, 20 F.3d 943, 946 (9th Cir. 1994) (citing 42
U.S.C. § 1382C(a)(3)).

1.  The claimant must first show that he or she is not
    currently engaged in substantial gainful activity.
    Id.

2.  If not so engaged, the claimant must next show
    that he or she has a severe impairment.  Id.

3.  The claimant is conclusively presumed disabled if
    his or her impairments are equivalent to one on
    the list of impairments that the Commissioner
    acknowledges are so severe as to preclude
    substantial gainful activity.

4.  If the claimant does not have a listed impairment,
    then the claimant must establish a prima facie
    case of disability by showing an inability to
    engage in past work because of the medical
    impairments.  Corrao, 20 F.3d at 946.

5.  Upon such a showing, the burden then shifts to the
    Commissioner to prove that plaintiff can engage in
    other types of substantial gainful work existing
    in the national economy given the claimant's age,
    education, work experience and residual functional
    capacity.  Jones, 760 F.2d at 995.

If the Commissioner finds that a claimant is disabled or not
disabled at any point in this process, the review process is
terminated.  Corrao, 20 F.3d at 946.

## IV.   *DISCUSSION*

In his written decision, the ALJ followed the five-step sequential evaluation process in considering Coe's claims.  From a review of the evidence of record, and the testimony presented at the hearing, the ALJ first found that Coe had not engaged in substantial gainful activity since her alleged onset date of July 22, 2004.  *Tr. at 19, 24 (Finding No. 1)*.

Second, the ALJ found that Coe has medically determinable "severe" impairments of depression and decreased vision in both eyes from pseudotumor cerebri.  *Tr. at 19, 24 (Finding No. 2)*. He also found that Coe has hypertension and left knee degenerative joint disease, neither of which are "severe" by Social Security definition.  *Tr. at 24 (Finding No. 2)*.

Third, the ALJ found that Coe's impairments do not meet or medically equal any impairment in the Listing of Impairments. *Tr. at 20, 24 (Finding No. 3)*.  Specifically, the ALJ determined that, under Listing 2.04 (loss of visual efficiency) that Coe's visual efficiency of her better eye after best correction is not 20 percent or less.  *Tr. at 20*.  With respect to Coe's depression, the ALJ determined that she does not have any of the required "marked" restrictions under the "B" criteria of Listing 12.04, and also does not satisfy the "C" criteria of the listing. *Id*.

Fourth, the ALJ found that, although Coe has decreased

-6-

visual acuity in both eyes and some depression, she still has the residual functional capacity ("RFC") to perform her past relevant work as a statement clerk. *Tr. at 24, 25 (Finding No. 7)*. Thus, he found that Coe is not disabled under the Act. *Tr. at 24, 25 (Finding No. 8)*.

In seeking reversal of the Commissioner's decision, Coe argues that the ALJ erred by: (1) failing to give greater weight to the opinion of Dr. Therese D. Ettel, Psy.D., her treating psychologist, *Plaintiff's Brief in Support of Motion for Summary Judgment*[3] *("Coe's Br.")* (Court's Doc. No. 18) *at 8-9*; (2) failing to state adequate reasons for his determination that Coe did not meet Listing 12.04, *id. at 3-4*; (3) improperly determining that Coe's allegations of total disability are not credible, *id. at 5, 7*; (4) asking the vocational expert ("VE") hypothetical questions that did not include the side effects that Coe suffers from the ventricular atrial shunt placed to reduce intracranial pressure, *id. at 6, 7*; and (5) relying on the VE's testimony with respect to jobs existing in significant numbers because the VE could not confirm how many of the potential jobs Coe could tolerate with her sensitivity to brightly-lit areas, *id. at 10-11*.

In response, the Commissioner argues that the ALJ's decision that Coe's impairments are not so severe that they preclude a

---

[3]Coe's Brief in Support of Motion for Summary Judgment is incorrectly captioned "*Plaintiff's Statement of Genuine Issues (Local Rule 56)*."

limited range of sedentary work is supported by substantial evidence in the record. *Defendant's Brief in Support of His Motion for Summary Judgment* ("*Commissioner's Brief*"] (Court's Doc. No. 21) *at 2*. The Commissioner also argues that the ALJ's decision is free of legal error. *Id.*

With respect to Coe's specific allegations of error, the Commissioner argues that: (1) Dr. Ettel's opinions with respect to Coe's depression do not support of finding of disability, *id. at 8-9*; (2) the ALJ properly determined that Coe did not meet Listing 12.04, *id. at 2-3*; (3) the ALJ properly discounted Coe's subjective complaints, *id. at 7-8*; (4) the ALJ did not err with respect to hypothetical questions to the VE because Coe's alleged subjective limitations were not credible and the ALJ was not required to include them, *id. at 5-6, 10*; and (5) the ALJ did not err with respect to the VE's testimony about other jobs because the ALJ determined that Coe could perform her past relevant work, *id. at 10-11*.

The primary issues before the Court are whether substantial evidence supports the ALJ's decision, and whether the ALJ's decision is free of legal error. For the reasons set forth below, the Court finds that the Commissioner's decision is based on substantial evidence in the record, and is free of legal error.

**A.    *Dr. Ettel's Opinions***

Coe argues that the ALJ should have given greater weight to the opinion of Dr. Ettel, her treating psychologist. *Coe's Br. at 2-3*. Coe notes that Dr. Ettel, in a letter to Coe's counsel dated January 24, 2006 (*Tr. at 304*), wrote that Coe has been diagnosed with depression and attends "almost weekly therapy sessions." *Id*. Dr. Ettel also noted in the letter that Coe "will continue to need supportive therapy to assist her with this transition [to future employment] as well as with issues of ongoing depression and grief over losses resulting from the pseudotumor." *Id*. Coe argues that the ALJ "does not mention Dr. Ettel's opinion" that Coe meets the diagnostic criteria for major depression, and that he should have given greater weight to Dr. Ettel's statements. *Id. at 4*.

"As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons. [The Ninth Circuit Court of Appeals has] also held that 'clear and convincing' reasons are required to reject the treating doctor's ultimate conclusions. Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by

substantial evidence in the record for so doing." <u>Lester v.</u>
<u>Chater</u>, 81 F.3d 821, 830 (9th Cir. 1996) (citations omitted).

In the case at hand, the Court concludes that the ALJ did
not err with respect to his evaluation of Dr. Ettel's opinion.
First, it is true that Dr. Ettel diagnosed major depression and
noted that Coe would need to continue with therapy.  It is also
true, however, that the ALJ expressly found that Coe suffers from
depression that is "severe" by Social Security definition.  *Tr.*
*at 19, 24 (Finding No. 2)*.  Thus he did not, as Coe argues, fail
to mention the diagnosis.

Second, the Court concludes that the ALJ did not err in the
weight that he afforded Dr. Ettel's statements.  In this Court's
opinion, Coe overstates the effect of Dr. Ettel's opinions.  The
opinions do not support Coe's alleged severe loss of function
that would render her incapable of engaging in any substantial
gainful activity in light of other evidence of record.  Rather,
Dr. Ettel's opinions indicate only that Coe has certain
limitations, the existence of which the ALJ expressly
acknowledged in his determination of Coe's RFC.  *Tr. at 25*
*(Finding No. 5)*.  The mere existence of impairments is not proof
of a disability.  Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir.
1993).

Third, Coe was required to show that her impairments were so
functionally limiting as to prevent her from engaging in any

substantial gainful activity for at least twelve consecutive months.  42 U.S.C. § 423(d)(1)(A); Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1459 (9th Cir. 1995).  A claimant "carries the initial burden of proving a disability." Ukolov v. Barnhart, 420 F.3d 1002, 1003 (9th Cir. 2005) (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).  Coe failed to meet this burden.

As noted in the written decision, the ALJ thoroughly reviewed and evaluated Coe's medical records with respect to her physical and mental conditions.  Tr. at 21-23.  In addition to acknowledging Dr. Ettel's opinions, the ALJ also set forth information from, and discussed in detail, Coe's other medical records with respect to her eyes, depression, left knee, and hypertension.  Id.  The Court concludes that the ALJ made no aberrant conclusions with respect to his evaluation of the medical evidence.  He relied upon substantial evidence to support his ultimate conclusion that Coe is not disabled.  In sum, he did not err in his consideration of Dr. Ettel's opinions.

**B.**   ***Listing 12.04***

Coe argues that the ALJ erred in concluding that she does not meet Listing 12.04.  Coe's Br. at 4.  She argues that the ALJ determined that she "does not meet the restrictions of the criteria under sections 'B' and 'C' of Listing 12.04 ... [but failed to state] whether she meets the requirements of Section

-11-

'A.'" *Id.*  Coe's argument is without merit.

Listing 12.04 provides:

12.04 *Affective Disorders*: Characterized by a
    disturbance of mood, accompanied by a full or
    partial manic or depressive syndrome. Mood refers
    to a prolonged emotion that colors the whole
    psychic life; it generally involves either
    depression or elation.

The required level of severity for these disorders
    is met when the requirements in both A and B are
    satisfied, or when the requirements in C are satisfied.

A. Medically documented persistence, either
    continuous or intermittent, of one of the following:

1. Depressive syndrome characterized by at least
    four of the following:

a. Anhedonia or pervasive loss of interest in
    almost all activities; or

b. Appetite disturbance with change in weight; or

c. Sleep disturbance; or

d. Psychomotor agitation or retardation; or

e. Decreased energy; or

f. Feelings of guilt or worthlessness; or

g. Difficulty concentrating or thinking; or

h. Thoughts of suicide; or

i. Hallucinations, delusions or paranoid thinking; or

2. Manic syndrome characterized by at least three of
    the following:

a. Hyperactivity; or

b. Pressure of speech; or

c. Flight of ideas; or

d. Inflated self-esteem; or

e. Decreased need for sleep; or

f. Easy distractibility; or

g. Involvement in activities that have a high probability of painful consequences which are not recognized; or

h. Hallucinations, delusions or paranoid thinking;

Or

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

**And**

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration;

**Or**

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in

-13-

> mental demands or change in the environment would be
> predicted to cause the individual to decompensate; or
>
> 3. Current history of 1 or more years' inability to
> function outside a highly supportive living
> arrangement, with an indication of continued need for
> such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.04 (2007) (bold

emphasis added).

According to the plain language of this regulation, to meet

the listing, Coe had to satisfy both the "A" and "B" criteria or

the C criteria.  At the third step of the sequential evaluation

process, the ALJ stated that "based on the entire documented

record, [Coe] does not have any of the required marked

restrictions under the 'B' criteria of Listing 12.04, and

evidence of the 'C' criteria was not established."  *Tr. at 20*.

This conclusion was not erroneous.

Coe has failed to provide medical evidence showing that she

meets all of the requirements of Listing 12.04.  See Sullivan v.

Zebley, 493 U.S. 521, 530 (1990) ("For a claimant to show that

his impairment matches a listing, it must meet *all* of the

specified medical criteria.  An impairment that manifests only

some of those criteria, no matter how severely, does not

qualify") (emphasis in original); Bowen v. Yuckert, 482 U.S. 137,

146 n.5 (1987).  Because Coe failed to show that she has marked

restrictions under the "B" criteria, and because there is no

evidence that she has satisfied the "C" criteria, as the ALJ

-14-

noted, the ALJ was not required to address whether her impairments satisfied the "A" criteria as Coe argues.  Although she may experience some limitations in the areas discussed in the three categories, Coe's difficulties fall short of the severity required under Listing l2.04.  The ALJ did not err.

### C.   *Coe's Credibility*

Coe argues that the ALJ erred in failing to provide adequate reasons for concluding that she is not credible with respect to her allegation of total disability.  *Coe's Br.* at 5, 7.  The Court disagrees.

When considering a claimant's subjective symptom testimony, an ALJ must perform a two-stage analysis: (1) the Cotton test; and (2) an analysis of the claimant's credibility as to the severity of the symptoms.  Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (referring to Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).  The Cotton test requires only that the claimant (1) produce objective medical evidence of an impairment; and (2) show that the impairment(s) could reasonably be expected to produce some degree of symptom.  Smolen, 80 F.3d at 1281-82 (citing Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) and Cotton, 799 F.2d at 1407-08); 20 C.F.R. § 404.1529(a) and (b).

If the Cotton test is satisfied, and there is no evidence of malingering, then the ALJ can reject subjective testimony of the severity of the symptoms only by citing specific, clear and

convincing reasons for doing so.  Smolen, at 1283-84 (citing Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993)).  To assess a claimant's credibility, the ALJ may consider ordinary credibility evaluation techniques, unexplained or inadequately explained failure to seek or follow treatment, and the claimant's daily activities.  Id. at 1284; Fair v. Bowen, 885 F.2d 597, 603-604 (9th Cir. 1989).  However, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaint."  Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)).  The ALJ must also consider the factors set forth in SSR 88-13 including:

> (1)  The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2)  Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3)  Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4)  Treatment, other than medication, for relief of pain;
>
> (5)  Functional restrictions; and
>
> (6)  The claimant's daily activities.

SSR 88-13, *superseded in part on other grounds*, 95-5P; see also 20 C.F.R. § 404.1529(c)(3).

Here, the ALJ found objective medical evidence in the record to support some of Coe's limitations. *Tr. at 19, 24*.  He also found that Coe's impairments could reasonably be expected to

-16-

produce some degree of symptom. *Id.* Moreover, the ALJ did not expressly find that Coe was malingering. *Id.* Thus, to reject Coe's subjective testimony about the severity of her symptoms, the ALJ had to cite specific, clear and convincing reasons. Smolen, 80 F.3d at 1283-84. The Court finds that he did.

The ALJ pointed to various inconsistencies in Coe's representations when compared to medical evidence in the record. *Tr. at 23.* First, the ALJ noted that although Coe alleges that she is disabled because of decreased vision in both eyes, her treating opthalmologist, Dr. Deborah Keenum, M.D., noted on May 11, 2005, that: she did not think that Coe would qualify for disability; Coe's intracranial hypertension and pseudotumor cerebri were stable; and Coe told her that she was enrolled at Montana State University-Billings ("MSU-B"). *Id.* (referring to *Tr. at 268*). The ALJ concluded that "[t]he signs and findings demonstrated by Dr. Keenum's examination as well as [Coe's] school activities, militates (sic) against a finding of disability due to decreased vision." *Id.*

Second, the ALJ noted that Dr. James Good, M.D., another of Coe's treating opthalmologists, reported on May 16, 2005, that Coe "is certainly not totally disabled," was capable of performing most of her daily functions, and has best-corrected vision of 20/40 in the right eye and 20/30 in the left eye. *Id.* (referring to *Tr. at 258*).

-17-

Third, the ALJ noted with respect to Coe's depression that Dr. Mark Mozer, Ph.D., an examining psychologist, observed that Coe: was capable of sustaining low-stress work activity; had average intelligence; and had no cognitive impairment. *Tr. at 24* (referring to *Tr. at 233*).

Fourth, the ALJ noted Dr. Ettel's observation that Coe had successfully completed both an adult education course and her first semester at MSU-B. *Tr. at 24* (referring to *Tr. at 304*).

Fifth, the ALJ noted that Dr. Charles Wittnam, M.D., reported on May 18, 2005, that Coe was "doing relatively well" and that her depression was improved. *Id.* (referring to *Tr. at 264*). Also, the ALJ noted that Dr. Wittnam reported on August 25, 2005, that Coe's depression was adequately controlled. *Id.* (referring to *Tr. at 262*).

Next, the ALJ pointed to evidence in the record indicating that Coe engages in activities of daily living that are inconsistent with total disability. The ALJ noted that the record contains evidence that Coe: (1) drives; (2) reads; (3) performs domestic chores; (4) watches television; (5) plays guitar; (6) sings; (7) cooks; (8) performs research on a computer; (9) completed an adult education class; (10) completed her first semester at MSU-B; (11) shops for groceries; (12) performs her own personal grooming; (13) takes care of animals; and (14) attends church. *Id.*

-18-

All of the foregoing observations indicate that the ALJ, in finding Coe not fully credible, applied ordinary credibility evaluation techniques, which he was permitted to do.  Smolen, 80 F.3d at 1283-84 (citing Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993)).  The Court cannot impose its own interpretation of the evidence for the ALJ's interpretation.  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  Thomas, 278 F.3d at 954 (citation omitted).

The Court concludes that the ALJ properly considered Coe's allegations with respect to the severity of her symptoms and limitations.  Further, the Court concludes that the ALJ provided specific, clear, and convincing reasons for his conclusion with respect to Coe's credibility.  The ALJ did not err.

### D.  *Inclusion of Side Effects In Hypothetical Question to Vocational Expert*

Coe argues that the ALJ erred in failing to incorporate into his hypothetical questions to the VE additional limitations related to her impaired vision, depression, and the side effects from her medications. *Coe's Br. at 4-6.*  The Court is not persuaded by Coe's arguments.

The Court has already found, *supra*, that the ALJ did not err in his assessment of Coe's credibility with respect to the limitations imposed by her conditions.  Also, as noted, substantial medical evidence supports the ALJ's conclusions with

-19-

respect to Coe's impairments and the limitations that they impose upon her.  The ALJ was not required to include in his hypothetical question to the VE Coe's own version of her symptoms and limitations.  Ostenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001) ("An ALJ is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence.").  Rather, he was free to consider the evidence as a whole in making his determination as to Coe's limitations, and in framing his hypothetical questions.  Thus, the ALJ did not err.

### E. *VE's Testimony With Respect to Numbers of Jobs*

Finally, Coe argues that the ALJ erred in relying on the VE's testimony with respect to the number of jobs existing because the VE could not confirm how many of the jobs Coe could tolerate with her sensitivity to brightly-lit areas.  *Coe's Br. at 10-11.*  Again, the Court is not persuaded.

In the sequential evaluation process outlined above, the ALJ is required to identify numbers of available jobs at step five only when a claimant is unable to perform her past relevant work.  Corrao, 20 F.3d at 946.  Here, the ALJ concluded at step four that Coe is capable of performing her past relevant work as a statement clerk.  *Tr. at 24, 25 (Finding No. 7).*  Thus, he was not required to proceed to step five to determine whether there are other jobs that Coe could perform.  The ALJ, therefore, did not err as Coe alleges.

## V.  *CONCLUSION*

As noted, Coe's depression and vision problems, while undoubtedly present and causing some degree of limitation, are not so functionally limiting that they preclude Coe from engaging in all substantial gainful activity.  Based on the foregoing discussion, the Court finds that substantial evidence exists in the record to support the ALJ's decision.  The Court further finds that the ALJ's decision is not based on legal error.  Therefore,

**IT IS ORDERED** that the Commissioner's motion for summary judgment (Court's Doc. No. 20) is GRANTED, Coe's motion for summary judgment (Court's Doc. No. 17) is DENIED, and the Commissioner's decision is AFFIRMED.

The Clerk of Court shall enter judgment accordingly.

DATED this 31st day of August, 2007.

Carolyn S. Ostby
United States Magistrate Judge